IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **KENNETH GRAHAM,**<br><br>       Plaintiff,<br><br>v.<br><br>**WAYNE LUKE**,<br><br>       Defendant. | Civil Action No. 7:20-CV-6 (HL) |

**ORDER**

Plaintiff Kenneth Graham filed this pro se lawsuit pursuant to 42 U.S.C. § 1983 and Georgia law alleging that Defendant Wayne Luke violated his rights under the Fourth Amendment by procuring an arrest warrant for Plaintiff without probable cause and based on knowingly false information. Presently pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 34). After reviewing the pleadings, briefs, affidavits, and other evidentiary materials presented, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.      FACTUAL BACKGROUND**

On September 2, 2019, Michelle Kilgore, a store clerk at the Pit Stop convenience store located at 514 South Davis Street in Nashville, Georgia, reported to Defendant Wayne Luke, an investigator with the Berrien County Sheriff's Office, receipt of a fraudulent check on July 16, 2019. (Doc. 34-3, p. 2-5). The $500.00 check purportedly was issued by Dinkins Brothers Properties,

LLC of 2901 Bemiss Road, Valdosta, Georgia to the order of Kenneth Anthony Graham, 605 Broad Street, Valdosta, Georgia. (Id. at p. 5-6). The check was endorsed on the back by Kenneth Anthony Graham. (Id. at p. 7). Ms. Kilgore informed Investigator Luke that the bank rejected the check as both counterfeit and forged. (Id. at p. 5).

The store did not retain video footage for the relevant date. (Id. at p. 5). Using the information listed on the check, Investigator Luke conducted a skip trace search. (Doc. 34-4, ¶ 6). The search returned an image for the driver's license of Plaintiff Kenneth Graham, which Luke showed to the store clerk. (Id. at ¶¶ 6-7). The clerk positively identified the person depicted on the license as the person who cashed the fraudulent check. (Id. at ¶ 8).

Based on the information gathered during his brief investigation, Investigator Luke sought arrest warrants for Plaintiff for felony printing/executing/negotiating a fictitious check, in violation of O.C.G.A. § 16-9-21, and misdemeanor forgery in the 4th Degree, in violation of O.C.G.A. § 16-9-1. (Doc. 34-4, ¶ 9; Doc. 34-3, p. 8-9). A judge with the Berrien County Magistrate Court issued warrants for Plaintiff's arrest on September 3, 2019. (Doc. 34-3, p. 8-9).

Plaintiff was involved in an automobile accident on December 9, 2019. (Doc. 40-6, ¶ 6). An officer with the Valdosta Police Department responded to the

scene. (Doc. 34-5, p. 50; Doc. 40-6, ¶ 6). Upon checking Plaintiff's license, the officer learned of the outstanding Berrien County warrants. (Doc. 34-5, p. 51; Doc. 40-6, ¶ 7). The officer placed Plaintiff under arrest and transported him to the Lowndes County Detention Center. (Doc. 34-5, p. 51; Doc. 40-6, ¶ 8). Berrien County Sheriff's officers collected Plaintiff on December 10, 2019, and moved him to the Berrien County Jail, where he was fingerprinted, strip searched, photographed, and booked. (Doc. 40-6, ¶¶ 9-10). Plaintiff remained in the Berrien County Jail until he was released on his own recognizance on December 19, 2019. (Doc. 34-5, p. 59, 66; Doc. 40-6, ¶ 17).

Plaintiff denies any knowledge of the counterfeit check. (Doc. 34-5, p. 81). He further states he never patroned the Pit Stop convenience store in Nashville, Georgia. (Id.). He claims he lost his driver's license at some point prior to these events. (Id. at p. 82-83). Plaintiff also points to evidence that he was working in Valdosta, Georgia at the time the individual claiming to be him presented the fraudulent check. (Id. at p. 70; Doc. 40-5; Doc. 40-6, ¶ 13). A judge with the Berrien County Superior Court entered an order granting the State of Georgia's motion to enter Nolle Prosequi on November 8, 2021, thereby disposing of the criminal charges pending against Plaintiff. (Doc. 22-1).

## II.     SUMMARY JUDGMENT STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and to present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). But, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Federal Law Claims

#### 1. Qualified Immunity

Defendant argues he is entitled to qualified immunity on Plaintiffs' § 1983 claims for illegal search and seizure, unlawful pretrial detention, and malicious prosecution because probable cause existed for Plaintiff's arrest. Finding no evidence supporting Plaintiff's contention that Defendant procured the warrants for Plaintiff's arrest based on false or fabricated evidence, the Court concludes Defendant committed no constitutional violation and, therefore, that he is entitled to qualified immunity. The Court **GRANTS** Defendant's motion for summary judgment as to each of Plaintiff's federal law claims.

##### a. General Principles

"A government official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity." Crosby v. Monroe Cnty., 394 F.3d 1328, 1332 (11th Cir. 2004). Qualified immunity offers complete protection for government officials sued in their individual capacities "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, qualified immunity "balances two important interests—the need to hold public officials accountable when they

5

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quotation omitted).

To receive qualified immunity, the official first must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). Here, there is no dispute that Defendant was acting within the scope of his discretionary authority. Once the official establishes that he was engaged in a "discretionary function," the burden shifts to the plaintiff "to show that the defendant is not entitled to qualified immunity." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original).

The Supreme Court has established a two-part test to evaluate the applicability of qualified immunity. "The threshold inquiry the court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation. Hope v. Pelzer, 536 U.S. 730, 736 (2002) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "If no constitutional right would have been violated were the allegations established, there is no

necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Saucier, 533 U.S. at 201).

### b.  Search and Seizure

Plaintiff alleges his arrest for forgery and negotiating a fictitious check violated the Fourth Amendment because Defendant lacked probable cause to request an arrest warrant. Plaintiff argues Defendant secured the arrest warrant based on information Defendant knew to be false. However, Plaintiff has presented no evidence that Defendant deliberately relied on false information. Rather, the crux of Plaintiff's argument is that Defendant should have conducted a more thorough investigation prior to pursuing Plaintiff's arrest.

"The Fourth Amendment protects individuals from unreasonable search and seizure." United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); U.S. Const., amend. IV. "[A]n arrest is a seizure of the person." Skop v. City of Atlanta, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing California v. Hodari D., 499 U.S. 621, 624 (1991)). The "reasonableness" of an arrest is "determined by the presence or absence of probable cause for the arrest." Id. "Probable cause to arrest exists when law enforcement officials have facts and

circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (quotation marks omitted). The probable cause standard "is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances." Skop, 485 F.3d at 1137.

Here, Defendant based his warrant application on the information supplied by the store clerk as well as the clerk's identification of Plaintiff as the alleged culprit. When determining whether there is probable cause for an arrest, "an officer is entitled to rely on a victim's criminal complaint as support for probable cause." Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998); see also Knight v. Jacobson, 300 F.3d 1272, 1275 (11th Cir. 2002) (finding statements of a single witness sufficient to establish probable cause to arrest a suspect). Plaintiff does not contest the veracity of the store clerk's statement to Defendant. Nor does Plaintiff provide evidence that Defendant knew or should have known the information provided by the clerk was false. Instead, Plaintiff suggests that had Defendant expanded the scope of his investigation, he would have discovered Plaintiff was working on July 16, 2019, and could not have been the person responsible for cashing the fraudulent check.

Plaintiff may be correct—additional investigation by Defendant may have eliminated Plaintiff as a suspect. But probable cause does not require an investigator "take every conceivable step at whatever cost, to eliminate the possibility of convicting an innocent person." Rankin, 133 F.3d at 1436 (alternations and internal quotation marks omitted). To support a finding of probable cause, "the facts and circumstances" within the officer's knowledge must be based on "reasonably trustworthy information . . . sufficient to warrant a prudent man into believing that the [plaintiff] had committed or was committing an offence." Id. at 1435. Here, the store clerk provided information to Defendant concerning the fraudulent check and made a positive identification of Plaintiff following examination of a copy of Plaintiff's driver's license. This information was sufficient to support a finding of probable cause.

The undisputed evidence supports a finding of probable cause for Plaintiff's arrest. Plaintiff consequently cannot demonstrate a violation of his Fourth Amendment right against unlawful search and seizure, and Defendant is entitled to qualified immunity. The Court therefore **GRANTS** Defendant's motion for summary judgment as to this claim.

### c.  Pretrial Detention

Plaintiff alleges Defendant caused Plaintiff's unlawful detention incident to his arrest. Plaintiff argues his detention at the Berrien County Jail was

unreasonable because the warrant authorizing his arrest was obtained based on false information and was not supported by probable cause. Under federal law, the Fourth Amendment permits a claim for unlawful pretrial detention if the court's probable cause order was based solely on fabricated evidence. Manuel v. City of Joliet, 137 S.Ct. 911, 918-19 (2017) ("[A] claim challenging pretrial detention [falls] within the scope of the Fourth Amendment."). The Fourth Amendment guarantees "a fair and reliable determination of probable cause as a condition for any pretrial restraint." Gerstein v. Pugh, 420 U.S. 103, 125 (1975). An individual detained prior to trial without a proper finding of probable cause may seek relief under "the Fourth Amendment's protection against unfounded invasions of liberty." Id. at 112.

As established above, there was probable cause to issue the warrants for Plaintiff's arrest. Furthermore, Plaintiff has produced no evidence that Defendant knowingly presented false or fabricated information in his warrant application. Accordingly, no Fourth Amendment violation arose from Plaintiff's detention. Absent a constitutional violation, Defendant is shielded by qualified immunity as to Plaintiffs' § 1983 claims for unlawful pretrial detention.

### d.    Malicious Prosecution

Next, Defendant moves for summary judgment as to Plaintiff's claim for malicious prosecution. The Eleventh Circuit recognizes malicious prosecution as

a violation of the Fourth Amendment and a cognizable constitutional tort under § 1983. See Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003). "To establish a malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Georgia law, the "six essential elements of a malicious prosecution claim are (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." Renton v. Watson, 319 Ga. App. 896, 898 (2013) (internal quotation marks omitted).

Plaintiff's malicious prosecution claim fails as a matter of law because Plaintiff has provided no evidence that Defendant acted with malice. The Court accordingly **GRANTS** Defendant's motion for summary judgment as to Plaintiff's malicious prosecution claim.

### B.     State Law Claims

#### 1.     Official Immunity

Defendant contends he is entitled to official immunity as to Plaintiff's state law claims for illegal search and seizure, false arrest, and malicious prosecution. The doctrine of official immunity "offers public officers and employees limited

protection from suit in their personal capacity." Cameron v. Lang, 274 Ga. 122, 123 (2001). A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a willful or wanton manner; with actual malice; or with the actual intent to cause injury." Brown v. Penland Constr. Co., 281 Ga. 625, 625-26 (2007); see also Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d). Because there is no dispute that Defendant was acting within his discretionary authority when he sought the arrest warrants, the burden shifts to Plaintiff to show that Defendant acted with actual malice. See Adams v. Hazelwood, 271 Ga. 414 (1999).

In the context of official immunity, "actual malice" requires "a deliberate intention to do wrong." Bateast v. DeKalb County, 258 Ga. App. 131, 132 (2002). A "deliberate intention to do wrong" means "the intent to cause the harm suffered by the plaintiff[ ]." Murphy v. Bajjani, 282 Ga. 197, 203 (2007). Similarly, "actual intent to cause injury" requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Kidd v. Coates, 271 Ga. 33 (1999). "Our task is not to decide, with the benefit of hindsight, what the officers should have done. We are concerned only with whether their behavior showed a deliberate intent to commit a wrongful act." Selvy v. Morrison, 292 Ga. App. 702, 707 (2008).

Plaintiff has offered no evidence of actual malice or any deliberate intention to do wrong by Defendant. Accordingly, the Court finds that Defendant is entitled to official immunity and **GRANTS** summary judgment as to Plaintiff's state law claims for illegal search and seizure, false arrest, and malicious prosecution.

### 2. Intentional Infliction of Emotional Distress

The burden to recover under a claim for intentional infliction of emotional distress is stringent. Mayorga v. Benton, 364 Ga. App. 665, 670 (2022). To prevail, a plaintiff must demonstrate that: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Id. (quoting Racette v. Bank of Am., 318 Ga. App. 171, 179 (2012)). "The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id.

The evidence before the Court does not support a finding that Defendant's conduct rose to the level requisite to establish a claim for intentional infliction of emotion distress. Defendant is entitled to judgment as a matter of law as to this claim.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Doc. 34). Judgment shall be entered in favor of Defendant.

**SO ORDERED**, this the 11th day of January, 2023.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

aks